## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PAUL CURTIS PEMBERTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-129-D** |
| | ) | |
| **ROBERT C. PATTON et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Paul Curtis Pemberton, a state prisoner appearing pro se and proceeding *in forma pauperis*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. United States District Judge Timothy D. DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636. Several motions are pending: Plaintiff's Motion for Hearing (Doc. No. 16); Plaintiff's Motion for Leave (Doc. No. 35); and Plaintiff's Motion for Extension of Time (Doc. No. 37). In addition, Plaintiff has filed a Motion for Temporary Restraining Order (Doc. No. 13) and a Motion for Preliminary Injunction (Doc. No. 14).

The undersigned has conducted an initial review of the Complaint (Doc. No. 1, as modified by Doc. Nos. 2 and 33) and accompanying exhibits (Doc. No. 1-1), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c). Based on that review, the undersigned recommends that all claims in this action be dismissed as (i) barred by the Court's disposition of Plaintiff's previous lawsuit, and/or (ii) failing to state a claim upon which relief may be granted, and/or (iii) barred by Eleventh Amendment immunity, or (iv) barred due to lack of exhaustion under the Prison Litigation Reform Act of 1995

("PLRA") as codified in pertinent part at 42 U.S.C. § 1997e(a). It is further recommended that Plaintiff's pending motions be denied and that the dismissal of this suit count as a prior-occasion "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I. Background

The undersigned's recommended disposition of this case is informed by historical background relevant to Plaintiff's current Complaint, all of which either is alleged in the Complaint or may be judicially noticed.

First, the factual allegations of Plaintiff's Complaint span a roughly five-year period, from May 2007 to August 2012. *See* Compl. (Doc. No. 1) at 16; *see, e.g.*, *id.* at 38, 132.[2] During this period, Plaintiff was incarcerated at three different state prison facilities: Mack Alford Correctional Center ("MACC") in Stringtown, Oklahoma; Oklahoma State Reformatory ("OSR") in Granite, Oklahoma; and Davis Correctional Facility ("DCF") in Holdenville, Oklahoma. Specifically, Plaintiff was housed at MACC from May 21, 2007, until being transferred to OSR on October 15, 2009. Plaintiff then remained at OSR until March 29, 2012, when he was transferred to DCF (where he remains today). *See* Compl. at 16, 264.

Next, this lawsuit represents Plaintiff's second attempt in the Western District of Oklahoma to obtain relief on certain of his legal claims. On September 7, 2010, Plaintiff

---

[1] Section 1915(g) bars an inmate who has had three "prior occasions" or "strikes"—i.e., prior civil actions or appeals dismissed as frivolous, malicious, or for failing to state a claim upon which relief may be granted—from proceeding *in forma pauperis* unless he or she "is under imminent danger of serious physical injury." See 28 U.S.C. § 1915(g).

[2] References to Plaintiff's filings in this Court use the ECF pagination.

filed a § 1983 suit in this Court, in which he raised multiple legal claims—including several of the same claims now raised in the instant case, against some of the same Defendants. *See Pemberton v. Jones* (*Pemberton I*), No. CIV-10-966-D, 2011 WL 1598194 (W.D. Okla. Apr. 27, 2011) (adopting *Pemberton I Report and Recommendation*, 2011 WL 1595158 (W.D. Okla. Jan. 24, 2011) (Couch, J.)). On April 27, 2011, the Court dismissed Plaintiff's amended complaint on screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and denied Plaintiff's multiple pending motions, including a motion for preliminary injunctive relief. *See Pemberton I*, 2011 WL 1598194, at *1-5. Certain of Plaintiff's claims in *Pemberton I* were dismissed "with prejudice," meaning the dismissal "operates as an adjudication on the merits" and prohibits Plaintiff from refiling those same claims in a later lawsuit in this Court. *See id.* at *1 n.1., *2, *3, *5; Fed. R. Civ. P. 41(b); *Styksal v. Weld Cnty. Bd. of Cnty. Comm'rs*, 365 F.3d 855, 859 (10th Cir. 2004); *Benton v. Town of S. Fork*, 587 F. App'x 447, 450 (10th Cir. 2014).

The Court further ruled that the dismissal would count as a "prior occasion" or "strike" for Plaintiff pursuant to 28 U.S.C. § 1915(g). *See Pemberton I*, 2011 WL 1598194, at *5. Plaintiff's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) was denied. *See Pemberton v. Jones*, No. CIV-10-966-D, 2011 WL 1780371 (W.D. Okla. May 10, 2011). Plaintiff's direct appeal of the Court's decision was dismissed by the Tenth Circuit, and Plaintiff's petition for writ of certiorari was denied by the U.S. Supreme Court. *See Pemberton I*, No. CIV-10-966-D (W.D. Okla.) (Doc. Nos. 70, 74). Upon the latter disposition, the Court's dismissal of *Pemberton I* ripened into a § 1915(g) strike against Plaintiff. *See Thomas v. Parker*, 672

F.3d 1182, 1183 (10th Cir. 2012).

## II.    Plaintiff's Complaint

In the instant action, Plaintiff's 265-page single-spaced Complaint, accompanied by 334 pages of exhibits, was filed on February 10, 2014.  *See* Compl. (Doc. No. 1); Compl. Exs. (Doc. No. 1-1).[3]  By Court Order of July 21, 2014, the Complaint was amended to name two additional Defendants.  *See* Doc. Nos. 2, 33.  Including those additions, Plaintiff names as Defendants: Justin Jones and Robert Patton, as respectively the former and current Director of the Oklahoma Department of Corrections ("ODOC"); John Doe/Jane Doe and Jane Doe/John Doe, as the ODOC employees responsible for housing and transfer of inmates, caretaking of ODOC records, and ODOC employee promotions and reassignments; Debbie Morton, as ODOC Administrative Review Authority and Director's Designee; Oklahoma Governor Mary Fallin; and Oklahoma Attorney General E. Scott Pruitt.  Plaintiff additionally names individual prison officials/employees from MACC: previous MACC Warden Walter N. Dinwiddie, current MACC Warden Anita Trammell, and MACC mailroom supervisor Sally Wiggins. Plaintiff also names as Defendants individual prison officials/employees from OSR: former OSR Warden James Rudek, current OSR Warden Tracey McCollum, OSR

---

[3] Plaintiff's Complaint contains a verification that he gave the pleading to prison officials for filing on January 31, 2014, and seeks application of the prison mailbox rule. *See* Compl. at 265; *Price v. Philpot*, 420 F.3d 1158, 1163-65 (10th Cir. 2005).  The verification does not establish this earlier date as the date of filing pursuant to the prison mailbox rule, however, because Plaintiff's statement is not subscribed "'as true under penalty of perjury.'"  *See Price*, 420 F.3d at 1165-66 & n.6 (quoting 28 U.S.C. § 1746). The discrepancy between this January 31st date and the February 10th date that is file-stamped on the Complaint is not material to any analysis herein.

Warden's assistant Carl Bear, OSR mailroom supervisor Jo Beth Harvey-Haynes, OSR unit manager Greg Brooks, OSR unit manager Kerry Kendal, OSR program coordinator and unit manager David Wortham, OSR law library supervisor Paula Bethea, OSR trust fund officer Ouida Nickell, OSR case manager Cheryl Wall, OSR case manager Melonie Almaguer, OSR corrections officer Alicia Gurrero, and OSR unit manager L.D. Ormand.

Plaintiff brings his civil rights claims against Defendants Fallin, Pruitt, and Patton in their official capacities only. Compl. at 16-17, 19, 22, 26; Doc. No. 33. Claims are raised against Defendants Jones, Nickell, Wall, Almaguer, Gurrero, and Ormand in their individual capacities only. *See* Compl. at 17, 21-22; Doc. No. 33; Fed. R. Civ. P. 25(d). All other Defendants are sued in both their individual and official capacities. Compl. at 17-21. The "Introduction" to Plaintiff's Complaint outlines over 20 incidents and conditions upon which he bases his constitutional claims. *See* Compl. at 1-5. Although lengthy, it is excerpted here (with alterations to numbering, spacing, spelling, punctuation, and capitalization throughout) in order to provide a nonexhaustive summary of Plaintiff's pleading:

> This is a Civil Rights Complaint filed by Paul Pemberton, an Oklahoma State Prisoner seeking injunctive relief for a Grand Jury or a Multi County Grand Jury investigation into the conduct of the listed defendants for violating Mr. Pemberton's United States Constitutional Rights seeking damages award and injunctive and declaratory relief for a restraint of the ongoing conduct under 42 U.S.C. §§ 1983, 1985 and 1986 and Mr. Pemberton establishes this facts with the following ongoing Constitutional Rights violations: the opening of legal mail and reading it outside Mr. Pemberton's presence and reading his legal documents' content while making photocopies outside his presence allowing an unfair advantage being gained by the opponent due to most cases are against Corrections Officials, in violation of the 4th Amendment; forcing Mr. Pemberton to drink contaminated drinking water causing him physical damage requiring

surgery to correct, in violation of the 8th Amendment; commonly practicing Nepotism employing and hiring employees' relatives and Husband and Wife Public Officials who work on the same prison yards for the purpose of conspiring to conceal ongoing Civil Rights violations . . . ; transferring Mr. Pemberton from one prison to another in and for retaliation for his extensive use of the inmate grievance procedure and for his filing suits in court for redress against the prison officials in violation of the 1st Amendment; an intentional interference and obstruction of the inmate grievance procedure and filing in court preventing proper exhaustion leaving no available state remedy; using and issuing a punitive grievance restriction to erect a barrier so to prevent proper exhaustion in retaliation for Mr. Pemberton exercising his right to free speech . . . and suppressing and holding in secret the proper methods in submitting a grievance . . . ; Prison Officials' retaliation and harassment against Mr. Pemberton for the exercise of his free speech rights . . . ; an ongoing intentional and deliberate indifference to the fundamental rights listed herein in the supervisor's failure to prevent, stop, or properly train subordinates . . . ; the intentionally housing Mr. Pemberton in a cell with a faulty locking mechanism . . . in violation of the 8th Amendment; taking Mr. Pemberton's money from his draw account and sending it to the court without authority and first providing due process . . . ; failing to provide a prison librarian with a library science degree, law degree or paralegal degree [and to ensure] access to black ink pens, an adequate supply of blank white paper to draft legal documents, making available photocopying services and refraining from reading the documents requested to be copied, timely supplying notary service, timely providing legal mail services, supplying postage or providing a timely means of paying for postage, and failing to provide adequate time in the law library so as to properly litigate meritorious claims . . . ; Corrections staff have failed to timely give notice, a statement of reasons for rejection, or an opportunity to be heard in contest of incoming legal and general mail before they have returned it to the sender . . . ; mailroom staff have deprived Mr. Pemberton of his property lawfully purchased . . . ; Prison Officials acted with deliberate indifference to a known substantial risk of serious harm to Mr. Pemberton by housing him with known enemies or gang members or affiliates with an evil motive and intent to cause Mr. Pemberton physical harm after being told verbally and in writing of the assaults against him . . .; Prison Officials housed Mr. Pemberton in unsanitary conditions without running water or available means to flush the toilet for weeks at a time . . . ; Prison Officials housed Mr. Pemberton in a cell without heat in freezing cold temperatures without providing extra blankets after being put on notice . . . ; . . . Prison Officials retaliated against Mr. Pemberton by labelling him a "snitch" with an evil motive to cause bodily injury at the hands of other inmates and staff . . . ;

Prison Officials retaliated in fabricating a "bogus" and "false" Misconduct Report for the free speech of Mr. Pemberton . . . ; Prison Officials deprived Mr. Pemberton personal property . . . to obstruct and interfere with his access and redress in the courts . . . ; Prison Officials suppressed, hid and prevented requested evidence in support of Mr. Pemberton's right to present a defense to the "bogus" disciplinary charge in their retaliation attempt to conceal these acts from surfacing . . . ; Prison Officials intentionally deprived Mr. Pemberton his right to due process in a disciplinary hearing . . . ; Prison Officials intentionally conspired to conceal the tortious acts of co-conspirators by the refusal to prevent any further act when brought to their direct attention . . . ; Prison Officials denied him the opportunity to present a meaningful defense, and failed adequately to investigate his allegations that charges against him for violating prison rules were fabricated, and entirely, "bogus" . . . .

*See* Compl. at 1-5.

Plaintiff roughly divides his legal claims into three sections. The first, Section A, contains the official-capacity claims against Defendants Fallin and Pruitt, by which Plaintiff seeks that the Court order Defendant Fallin to initiate an Oklahoma multicounty grand jury investigation of Plaintiff's claims and order the Oklahoma Attorney General's Office to conduct an investigation of Plaintiff's claims "and/or notify the U.S.[]Attorney's Office by request that the criminality be investigated." *See* Compl. at 22-31. Section B comprises the claims against numerous individual Defendants for various constitutional violations under § 1983. *See* Compl. at 31-211. Section C consists of claims through which Plaintiff alleges that certain Defendants conspired to injure and deprive Plaintiff in violation of 42 U.S.C. § 1985(3). *See* Compl. at 212-52.

Liberally and reasonably construed, Plaintiff's interrelated Sections each contain multiple claims against multiple Defendants and share common factual allegations centered upon events occurring at MACC and OSR. Plaintiff has organized his claims

within and across Sections by listing each allegedly improper incident and identifying all Defendants associated with that incident or by identifying a Defendant and then reciting all claims applicable to that Defendant, which results in duplicative iterations of the same factual allegations and legal claims throughout the Complaint. For ease of comprehension, the undersigned has primarily analyzed the pleading through reference to its underlying factual allegations and the legal claims applicable thereto, rather than proceeding Defendant by Defendant. The undersigned also has assigned numbers to certain claims, e.g., "Claim 5," that vary from the numbering provided by Plaintiff, to better organize the analysis of Plaintiff's filings.

## III.    The Court's Screening Obligation

The Court is obligated to conduct an initial review of a complaint filed by a prisoner seeking redress from a governmental entity, officer, or employee of a governmental entity. If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, the Court "shall" dismiss the complaint. 28 U.S.C. § 1915A(a)-(b); *see also* Doc. No. 27 (order granting Plaintiff's application to proceed *in forma pauperis*); 28 U.S.C. § 1915(e)(2)(B) (governing *in forma pauperis* actions and requiring dismissal under these grounds "at any time"); 42 U.S.C. § 1997e(c)(1) (governing prisoners' § 1983 actions challenging prison conditions and requiring dismissal "if the court is satisfied" that any of these grounds exist).

While the Court construes a pro se litigant's pleadings liberally, all parties must adhere to the rules of procedure applicable to their cases. *See Kay v. Bemis*, 500 F.3d

1214, 1218 (10th Cir. 2007).  The Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (internal quotation marks omitted) (affirming district court's dismissal of *Bivens* complaint as time-barred on 28 U.S.C. § 1915A screening); *Kay*, 500 F.3d at 1217.  "We review the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on its face." *Young*, 554 F.3d at 1256 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(a), 12(b)(6).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When it is obvious that the plaintiff cannot prevail on the facts alleged and amendment would be futile, a district court may sua sponte dismiss a pro se complaint for failure to state a claim upon which relief may be granted.  *Kay*, 500 F.3d at 1217. Similarly, a court may dismiss a civil rights complaint on screening for failure to state a valid claim when it is obvious from the face of the complaint that the claims are barred by the applicable statute of limitations and no further factual record need be developed. *See Young*, 554 F.3d at 1256-58; *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006).

## IV.    Analysis of Plaintiff's Claims

### A. *Plaintiff's Section A: Claims Against the Governor and the Attorney General*

#### 1.    Defendant Governor Mary Fallin

In Section A, Plaintiff brings an official-capacity claim against Defendant Fallin "not for liability, but for an investigation into tortious conduct of her subordinates listed

within this complaint." Compl. (Doc. No. 1) at 22-26. Specifically, Plaintiff seeks no money damages but requests that the Court order the Governor, as the alleged supervisor of ODOC and Oklahoma state agencies, to initiate a multicounty grand jury investigation of the other Defendants' criminal acts while simultaneously enjoining such unlawful acts. Plaintiff cites multiple Oklahoma state and federal criminal statutes that the public-official Defendants allegedly have violated, including through obstruction of justice, assault and battery, and destroying evidence. *See id.*; Doc. No. 2.

The statutory provisions cited in Plaintiff's pleading do not provide authority for this federal district court to order a state official to command (in some unspecified manner) that a state-level, multicounty grand jury criminal investigation be conducted. *See* Compl. at 22-26; *cf. Pemberton I Report and Recommendation*, 2011 WL 1595158, at *15 (recommending denial of Plaintiff's motion for grand jury investigation where Plaintiff cited no authority for such action). Plaintiff's attempt to have a federal court inject itself into the initiation of state criminal proceedings raises serious abstention questions and lies far outside the injunctive relief contemplated as an available remedy in a civil lawsuit brought under the auspices of § 1983. *See Rizzo v. Goode*, 423 U.S. 362, 378-80 (1976) (noting "the settled rule that in federal equity cases 'the nature of the violation determines the scope of the remedy'");[4] Okla. Stat. tit. 22, § 351 (prescribing

---

[4] The *Rizzo* Court stated:

> Where an injunction against a criminal proceeding is sought under § 1983, "the principles of equity, comity, and federalism" must nonetheless restrain a federal court.

that a multicounty grand jury is convened by order of the Oklahoma Supreme Court upon application of the Oklahoma Attorney General); *cf.* Okla. Const. art. 2, § 18 (prescribing that a grand jury is convened upon the order of an Oklahoma state district judge upon the judge's own motion or a petition signed by qualified electors or is ordered convened upon the filing of a verified application by the Oklahoma Attorney General). Moreover, even if Plaintiff could prevail on his § 1983 claims against the other Defendants (an outcome foreclosed if the undersigned's recommendation is accepted), a finding of *civil* liability in this lawsuit may not be conflated with a holding that Defendants are potentially *criminally* liable for any acts or omissions. Plaintiff's official-capacity claim against Defendant Fallin should be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

---

But even where the prayer for injunctive relief does not seek to enjoin the state criminal proceedings themselves, we have held that the principles of equity nonetheless militate heavily against the grant of an injunction except in the most extraordinary circumstances. In *O'Shea v. Littleton*, [414 U.S. 488, 502 (1974)], we held that "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized in the decisions previously noted." And the same principles of federalism may prevent the injunction by a federal court of a state civil proceeding once begun.

Thus the principles of federalism which play such an important part in governing the relationship between federal courts and state governments, though initially expounded and perhaps entitled to their greatest weight in cases where it was sought to enjoin a criminal prosecution in progress, have not been limited either to that situation or indeed to a criminal proceeding itself. We think these principles likewise have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments . . . .

423 U.S. at 379-80 (citation omitted).

## 2. Defendant Attorney General Scott Pruitt

Plaintiff also brings a claim against Oklahoma Attorney General Scott Pruitt not for liability, but only "in his Official Capacity as prosecuting attorney of the State of Oklahoma." Plaintiff seeks an order from this Court instructing Defendant Pruitt "to initiate a Grand Jury investigation and/or for [Defendant Pruitt and his employees] to report and request that the U.S. Attorney's office conduct the investigation." *See* Compl. at 26-31.

The same factors weighing against the viability of Plaintiff's claim for relief against Defendant Fallin are applicable to Plaintiff's request for an order requiring a state grand jury criminal investigation to be procured by Defendant Pruitt. Even assuming that Plaintiff's claims in this civil suit were not subject to dismissal at screening, those claims are not based on violations of Oklahoma criminal law and it would not be a proper remedy for this Court to intrude upon the Attorney General's discretion and authority with respect to grand jury investigations. *See Rizzo*, 423 U.S. at 378-80; Okla. Const. art. 2, § 18 (stating that a grand jury is convened upon the order of a state district judge or upon application of the Attorney General); Okla. Stat. tit. 22, § 351(A) (prescribing that the Oklahoma Attorney General shall file an application for a multicounty grand jury investigation when such an investigation is considered to be "in the public interest" "in the judgment of the Attorney General" and that the Oklahoma Supreme Court "shall determine whether or not" to convene such a grand jury). Plaintiff's other form of requested relief—that Defendant Pruitt seek an investigation by the U.S. Attorney's Office—would require the Court to order a state prosecutor to coordinate his efforts with

federal prosecutors. Such a remedy would undermine these authorities' discretion at both the state and federal levels and, in any event, is premised upon a finding of wrongdoing by Defendants that (i) speaks to criminal rather than civil liability and so could not reasonably be the result of this suit; and (ii) will not result from this suit regardless, if the recommended dismissal of all claims against all Defendants set forth herein is accepted. Plaintiff's official-capacity claim against Defendant Pruitt should be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

## B. Claims Against Defendants Wortham and Nickell

Plaintiff identifies OSR program coordinator and unit manager David Wortham and OSR trust fund officer Ouida Nickell as Defendants to this action. Defendant Wortham is sued in his official and individual capacities, and Defendant Nickell in her individual capacity only. *See* Compl. at 21. Beyond naming them and describing their employment duties and responsibilities, however, the Complaint states no factual allegations specifically raised against these two Defendants in either the substantive legal claims against individual Defendants or in the related conspiracy claims. *See* Compl. at 21, 31-252; Doc. No. 2.

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). It is not sufficient to establish only that a federal right was violated. The plaintiff must allege facts to plausibly establish a causal

connection between an alleged violation of a federal right and *each* defendant. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). A defendant cannot be vicariously liable under § 1983 for the acts of another; each defendant must be causally connected to the violation. *Pahls*, 718 F.3d at 1225-26; *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768-69 (10th Cir. 2013).

### 1. Individual-Capacity Claims Against Defendants Wortham and Nickell

In stating a claim for relief under § 1983, a plaintiff must, for each defendant, allege facts that plausibly establish a causal connection between that defendant and the alleged violation of federal rights. If a defendant is sued in his or her individual capacity on such claim, the plaintiff must allege facts to establish the defendant's "personal involvement" in the asserted violation of federal rights. *Schneider*, 717 F.3d at 768. These requirements equally apply when a supervisor is alleged to be responsible for the misconduct of a subordinate. *See id.* at 767-69; *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 & n.8 (10th Cir. 2010).

Here, Plaintiff has not stated factual allegations showing that these Defendants personally participated in or are causally connected to any deprivation of a federal right. Rather, these Defendants are included in the lengthy list of people being sued but then essentially ignored elsewhere in the Complaint. Due to the lack of factual support to establish the personal participation or involvement by Defendant Wortham or Defendant Nickell in the alleged violation of Plaintiff's federal rights, Plaintiff's claims as to these Defendants in their individual capacities should be dismissed without prejudice for

failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c).

### 2. Official-Capacity Claims Against Defendant Wortham

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state unless the immunity is abrogated by Congress or unequivocally waived by the state. U.S. Const. amend XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996). The State of Oklahoma has not waived its relevant Eleventh Amendment immunity from suit in federal courts. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998); *see also Hemphill v. Jones*, No. CIV-11-1192-HE, 2012 WL 7059643, at *3 (W.D. Okla. Oct. 31, 2012) (report and recommendation of Roberts, J.), *adopted*, 2013 WL 501353 (W.D. Okla. Feb. 11, 2013). Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 342-45 (1979). Thus, the State of Oklahoma is immune from § 1983 claims in federal court.

Eleventh Amendment immunity applies to any state agency considered to be an "arm[] of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *see also ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *abrogated on other grounds as recognized in Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). A defendant's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins.*

*Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted). Here, although not named as a defendant, the relevant state agency for Plaintiff's official-capacity claim against Defendant Wortham is ODOC, because Defendant Wortham was employed by that agency during the circumstances giving rise to this lawsuit. *See* Compl. at 21. The Tenth Circuit has stated that it considers ODOC an arm of the State of Oklahoma. *See Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988) (agreeing with party's concession that ODOC was entitled to Eleventh Amendment immunity as an arm of the state). ODOC's powers and budgetary responsibilities establish that it is an arm of the State of Oklahoma. *See, e.g.*, Okla. Stat. tit. 57, §§ 502-504, 505-508, 509, 510; *id.* tit. 62, §§ 34.42, 34.50-.52, 34.57. Thus, ODOC is protected from suit in federal court by Eleventh Amendment immunity. *See also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *ANR Pipeline Co.*, 150 F.3d at 1187.

This immunity extends to claims against ODOC employees who are sued in their official capacities for money damages. "[I]t is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'" *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)); *see Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "Because the defendants are employees of the Oklahoma Department of Corrections . . . , the Eleventh Amendment applies to the official-capacity claims for damages." *Cleveland v. Martin*, No. 14-5060, 2014 WL 5368884, at *3 (10th Cir. Oct. 23, 2014). Accordingly,

to the extent Plaintiff's claims seek monetary relief from Defendant Wortham in his official capacity, such claims are barred by the Eleventh Amendment and should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2); 42 U.S.C. § 1997e(c)(1).

In addition, to the extent that injunctive or other nonmonetary relief is sought, Plaintiff's official-capacity claims against Defendant Wortham must be dismissed because the mere naming of this Defendant in the listing of individuals being sued does not provide sufficient facts to state a claim upon which relief may be granted. If a defendant is sued in his or her official capacity, the suit generally is treated as one against the entity that the official represents and must be based on the entity's official policy or custom that caused the violation of the plaintiff's federal rights. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Plaintiff has not identified an official policy or custom of ODOC or OSR upon which this claim is based or linked Defendant Wortham to any kind of official policy or custom with respect to any of Plaintiff's constitutional claims. Plaintiff's official-capacity claims against Defendant Wortham should be dismissed without prejudice in their entirety. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii), 1915A(b); 42 U.S.C. § 1997e(c)(1).

### C. *Official-Capacity Claims Against Other ODOC Defendants*

As noted above, Plaintiff also brings official-capacity claims against Defendants Robert Patton, John Doe/Jane Doe, Jane Doe/John Doe, Debbie Morton, Walter Dinwiddie, Anita Trammell, Sally Wiggins, James Rudek, Tracy McCollum, Carl Bear, Jo Beth Harvey-Haynes, Greg Brooks, Kerry Kendal, and Paula Bethea. All of these Defendants are alleged to be ODOC employees. Compl. (Doc. No. 1) at 17-21. Due to

the expansive and convoluted nature of Plaintiff's Complaint, it is not clear what forms of relief are sought against these Defendants.  To the extent Plaintiff seeks monetary relief from these Defendants in their official capacities, however, these claims are barred by the Eleventh Amendment for the same reasons as are the official-capacity claims against Defendant Wortham—and should be dismissed on that basis.  *See supra* Part IV.B.2; *Peterson*, 499 F. App'x at 786; 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

### D. Plaintiff's Sections B and C: Individual and Conspiracy Claims

#### 1.    Claim 1: Illegal Searching of Mail at MACC

In Claim 1, Plaintiff alleges that his legal mail was searched outside of his presence in violation of the Fourth Amendment.  Compl. at 31-34, 170-72, 212-22. Specifically, Plaintiff asserts that on or about May 11, 2009, Defendant Sally Wiggins, the mailroom supervisor at MACC, opened an item of mail that was addressed to Plaintiff that had been sent to him by the McIntosh County (Oklahoma) District Court.  Compl. at 31, 32.  Plaintiff asserts that Defendant Wiggins and Defendant Justin Jones (former ODOC Director, in his individual capacity) are liable for this violation of Plaintiff's constitutional rights and for failing to properly process his administrative grievance thereon. Compl. at 32-34, 170-72.  Plaintiff additionally claims that Defendants Wiggins, current MACC Warden Anita Trammell, and former MACC Warden Walter Dinwiddie

conspired and engaged in concerted action to deprive Plaintiff of his constitutional rights with regard to this unauthorized opening of his legal mail. Compl. at 212-22.[5]

It is evident from the face of the Complaint that Claim 1 is subject to dismissal as time-barred by the relevant statute of limitations. "The statute of limitations period for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose, and in Oklahoma, that period is two years." *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (citation omitted) (citing Okla. Stat. tit. 12, § 95(A)(3)). This two-year limitations period also applies to conspiracy claims brought under the auspices of 42 U.S.C. § 1985. *Crosswhite v. Brown*, 424 F.2d 495, 496 (10th Cir. 1970); *see, e.g.*, *Alexander v. Oklahoma*, 382 F.3d 1206, 1212 & n.1 (10th Cir. 2004); *Bailey v. Casper Coll.*, No. 98-8074, 1999 WL 101076, at *1 (10th Cir. Mar. 1, 1999).

Although the length of the limitations period is determined by reference to the law of the forum state, accrual of the federal cause of action—which "dictates when the statute of limitations begins to run for purposes of § 1983"—is determined by federal

---

[5] With the exception of the "March 2012 Claims" (consolidated in Claim 10, *see infra* Part IV.D.10), Plaintiff identifies for each Claim both those Defendants allegedly responsible for the underlying constitutional violation and those Defendants allegedly responsible for mishandling his attempts at administrative grievances of that violation. Because Plaintiff's claims are all subject to dismissal on grounds separate from any possible failure to administratively exhaust, the undersigned identifies all Defendants named in connection with each claim in any regard but does not describe the exhaustion aspect of each claim in detail. *Cf.* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

law.  *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998); *McCarty*, 646 F.3d at 1289.

> A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated.  This requires the court to identify the constitutional violation and locate it in time.

*Smith*, 149 F.3d at 1154 (citations and internal quotation marks omitted).

Plaintiff's Claim 1 alleges that his constitutional rights were violated on or about May 11, 2009.  Compl. at 31.  Plaintiff's Complaint reflects that he was aware of his mail being opened and that he believed that this action violated his rights no later than May 11, 2009, when he first sought internal administrative relief for this allegedly unauthorized act.  Compl. at 32 (referencing a written Request to Staff submitted to prison staff on May 11, 2009).  Plaintiff's submitted administrative grievance documents, incorporated into and included with the Complaint, likewise reflect that Plaintiff knew of this alleged violation of his rights no later than May 11, 2009.  *See* Compl. Exs. (Doc. No. 1-1) at 91 (Request to Staff dated May 11, 2009, with staff member's response dated the next day).  Plaintiff's civil rights claim therefore was required to be brought within two years of that date—i.e., no later than May 11, 2011.  *See McCarty*, 646 F.3d at 1289; *Smith*, 149 F.3d at 1154.

Plaintiff raised this claim in essentially identical form in *Pemberton I*.  *See Pemberton I*, No. CIV-10-966-D (Am. Compl. (Doc. No. 17-1) at 1-2, 3-6, 21-24). *Pemberton I* was initiated in September 2010.  The opening-of-mail claim was dismissed

without prejudice for failure to state a claim upon which relief may be granted on April 27, 2011. *See Pemberton I*, 2011 WL 1598194, at *1, *4. Following the Tenth Circuit's dismissal of Plaintiff's direct appeal, the U.S. Supreme Court denied certiorari on October 9, 2012. *See Pemberton I*, No. CIV-10-966-D (Doc. Nos. 70, 74).

Oklahoma's "savings statute," Title 12, Section 100 of the Oklahoma Statutes, "allows a plaintiff who fails otherwise than upon the merits in an action that is timely commenced to commence a new action within one year after the failure, although the time limit for commencing the action has expired." *Twashakarris, Inc. v. INS*, 890 F.2d 236, 237 (10th Cir. 1989). Under this savings provision—even assuming without deciding that *Pemberton I* was timely commenced and was dismissed in relevant part "otherwise than upon the merits"—Plaintiff had one year from the lawsuit's "failure" in which to "commence a new action." *See* Okla. Stat. tit. 12, § 100; *Twashakarris*, 890 F.2d at 237; *Eastom v. City of Tulsa*, 563 F. App'x 595, 596 (10th Cir. 2014) ("Oklahoma's savings statute . . . affords civil plaintiffs an additional year to refile if a case fails other than on the merits after the original limitations period has expired."); *Williams v. City of Guthrie, Okla.*, 109 F. App'x 283, 286-87 (10th Cir. 2004) (applying Section 100's savings statute to § 1983 claims brought in federal court).

Plaintiff's one-year savings period expired, at the latest, on October 9, 2013, one year after the U.S. Supreme Court denied certiorari of *Pemberton I*.[6] Because Plaintiff's

---

[6] Plaintiff's direct appeal of *Pemberton I* was dismissed by the Tenth Circuit on March 16, 2012; Plaintiff's petition for certiorari was denied by the U.S. Supreme Court on October 9, 2012. *See Pemberton I*, No. CIV-10-966-D (Doc. Nos. 70, 74). The

Complaint was not filed until February 10, 2014—four months beyond that one-year

undersigned has found no published Tenth Circuit decision directly addressing whether the one-year time limit of Section 100 commences in a federal case upon the appellate court's disposition or upon the denial of certiorari by the U.S. Supreme Court, if applicable.

In *Twashakarris*, the Tenth Circuit indicated that the former date would be operative, stating: "Section 100 provides for an additional year to commence an action . . . if the plaintiff fails in an action otherwise than on the merits." 890 F.2d at 237. The court explained that the key to understanding this provision "is the word 'action.' We hold that an 'action' includes the initial judgment and any validly filed appeals *that suspend the finality of the judgment*." *See id.* (emphasis added) (stating that if a timely appeal is filed, "the 'action' would continue until the appeal was resolved"). In *Twashakarris*, however, the Tenth Circuit did not expressly consider the effect that a denial of certiorari by the U.S. Supreme Court might have on commencement of the one-year statutory time period.

The Oklahoma Supreme Court, in *Grider v. USX Corp.* squarely held that the denial of a petition for certiorari by the U.S. Supreme Court, rather than the final disposition of the direct federal appeal by the Tenth Circuit, starts the clock for purposes of Section 100. *See Grider*, 847 P.2d 779, 781-85 (Okla. 1993). The state appellate court determined that "the critical date is that date on which the appeal process is final"—i.e., "the date the judgment is decided on appeal." *Id.* at 784-85 (citing *Twashakarris* for the proposition that the one-year limitations period would be tolled "until the appeal was resolved"). The *Grider* court, however, viewed the "critical date" as the date of denial of certiorari by the U.S. Supreme Court, rather than the date of disposition of the direct appeal by the Tenth Circuit. *See id.* at 782, 785; *see also id.* at 788 (Opala, J., concurring) ("The court holds *broadly* today that timely-filed pendent jurisdiction claims, dismissed on grounds other than the merits by a federal court sitting in Oklahoma, may be refiled in a state court within one year from the time 'federal reviews' of the U.S. district court's dismissal have been exhausted."). Justice Opala defined "federal reviews" to include "both appeal and certiorari process." *See id.* at 788 n.8 (Opala, J., concurring).

Because the U.S. Supreme Court's review on a writ of certiorari is discretionary, and the filing of a request for such review does not automatically "suspend the finality of the judgment," the *Grider* court's holding arguably conflicts with the view expressed by the Tenth Circuit in *Twashakarris*. *See* U.S. Sup. Ct. R. 10; Fed. R. App. P. 41(d)(2); *Twashakarris*, 890 F.2d at 237. Given the posture of this matter, however, the undersigned has applied the view more favorable to Plaintiff and assumed throughout this Report and Recommendation that the operative date of commencement of the one-year Section 100 limitations period commenced with the U.S. Supreme Court's denial of certiorari in *Pemberton I* on October 9, 2012, rather than upon the earlier date on which the Tenth Circuit dismissed the *Pemberton I* appeal.

mark and nearly five years after the events giving rise to Claim 1—the associated §§ 1983 and 1985 claims expired prior to the initiation of this action and should be dismissed with prejudice as time-barred.[7]  *See Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128-29 (10th Cir. 1991) ("[A] dismissal on limitations grounds is a judgment on the merits."); *Parker v. Dinwiddie*, 258 F. App'x 200, 201 (10th Cir. 2007) (same); *see, e.g.*, *Davis v. Okla. Cnty.*, No. CIV-08-550-HE, 2009 WL 4264870, at *1, *2 & n.16 (W.D. Okla. Nov. 23, 2009) (dismissing § 1983 claims with prejudice sua sponte due to untimeliness).  *See generally Curley v. Perry*, 246 F.3d 1278, 1282-84 (10th Cir. 2001) (affirming district court's sua sponte dismissal with prejudice of § 1983 complaint for failure to state a claim where "amendment would be futile").

### 2.    Claim 2: Retaliatory Transfer from MACC to OSR

Plaintiff in Claim 2 alleges that he was subjected to unwarranted and retaliatory conduct, specifically an unlawful transfer from MACC to OSR, in violation of his First Amendment rights.   Plaintiff raises this Claim against Defendants John/Jane Doe, Jane/John Doe, Dinwiddie, and Jones.  Compl. at 34-37, 172-75.  According to Plaintiff, he was transferred from MACC to OSR on or about October 15, 2009, in retaliation for providing other inmates with legal assistance and for his extensive use of MACC's internal grievance system.  Compl. at 35-36.

The face of the Complaint, as well as the attached Exhibits, reflects that Plaintiff's Claim 2 accrued concurrently with his MACC-OSR transfer on or about October 15,

---

[7] The lack of availability of equitable tolling for this Claim and all others for which dismissal is recommended on untimeliness grounds is addressed in Part IV.E.

2009, which would set his deadline to file a § 1983 claim arising therefrom at October 15, 2011. Compl. at 34-37, 172-75; *McCarty*, 646 F.3d at 1289; *see also* Compl. at 36 (Plaintiff alleging that he raised this constitutional violation to prison officials on November 6, 2009); Compl. Exs. at 107-08 (Request to Staff regarding transfer to OSR dated November 6, 2009). Plaintiff raised a claim based on this retaliatory transfer in *Pemberton I*, which was dismissed without prejudice on April 27, 2011, for failure to state a plausible claim for relief. *See Pemberton I*, 2011 WL 1598194, at *4. Even assuming applicability of Oklahoma's savings clause as outlined above, Plaintiff's one-year grace period expired on October 9, 2013, at the latest, rendering Plaintiff's Complaint of February 10, 2014, untimely with respect to Claim 2. This claim should be dismissed with prejudice as time-barred. *See supra* Part IV.D.1.

### 3. Claim 3: Contaminated Drinking Water at MACC

Claim 3 of the Complaint alleges that Plaintiff's Eighth Amendment rights were violated because while at MACC Plaintiff was forced to drink contaminated water, which "contain[ed] b[y]products that caused and/or [are] affirmatively linked to a tumorous growth" in Plaintiff's neck that was surgically removed on March 10, 2010. Compl. at 37-39. Plaintiff raises Claim 3 against Defendants Dinwiddie and Jones. Compl. at 37-42, 175-77.

Regarding the time of the alleged constitutional violation, Plaintiff alleges that he was forced to drink nonpotable water from "5/2/07 to 10/15/09," with resultant surgery in March 2010. Compl. at 37-40. Plaintiff's federal civil rights claim therefore accrued by March 10, 2010, at the very latest, as Plaintiff knew or should have known his

constitutional rights had been violated by the date of surgery. *See* Compl. Exs. at 5-17 (assorted notifications and public notices regarding MACC public water system dated 2005-2009), 37-45 (records regarding Plaintiff's neck surgery and other medical issues). Indeed, Plaintiff alleges that he sought internal administrative relief on this issue as early as November 6, 2009. Compl. at 40-41. Plaintiff raised a claim regarding the MACC drinking water in *Pemberton I*, filed on September 7, 2010. The Court dismissed the claim without prejudice on April 27, 2011, for failure to state a plausible claim under the Eighth Amendment. *See Pemberton I*, 2011 WL 1598194, at *1, *4.

Even assuming that Oklahoma's one-year savings statute applies, Plaintiff's time to refile expired no later than October 9, 2013. Plaintiff's Eighth Amendment claim regarding contaminated drinking water at MACC should be dismissed with prejudice as untimely filed on February 10, 2014. *See supra* Part IV.D.1.

### 4. Claim 4: Access to the Courts While at OSR

In Claim 4, Plaintiff asserts that he was deprived of his right to access to the courts while housed at OSR due to the refusal of certain Defendants to mail his written legal correspondence and the imposition of other improper restrictions on Plaintiff's access to materials and ability to send written correspondence through the mail. Compl. at 42-51, 56-65, 178-80, 183-86. Plaintiff names Defendants Jo Beth Harvey-Haynes, Debbie Morton, James Rudek, Jones, Paula Bethea, and Carl Bear as liable for this violation and also identifies Defendants Harvey-Haynes and Rudek as coconspirators on a conspiracy claim founded upon the same factual allegations. Compl. at 42-52, 178-80, 223-30.

Plaintiff alleges that the violations of his constitutional rights occurred "[s]hortly after arrival" at OSR—i.e., shortly after his transfer to OSR on or about October 15, 2009. Compl. at 43. Plaintiff first sought administrative relief for the allegedly unlawful restrictions on his legal communications and access to the courts on November 20, 2009. Compl. at 46; Compl. Exs. at 110-11 (Request to Staff dated November 20, 2009, citing violations of Plaintiff's First, Sixth, and Fourteenth Amendment rights to correspond with his attorney due to restrictions on and inspections of mail). It therefore is clear that Plaintiff had knowledge of the facts upon which Claim 3 is based, which triggered his two-year statute of limitations for filing a federal civil rights claim, no later than November 20, 2009. *See McCarty*, 646 F.3d at 1289; *Smith*, 149 F.3d at 1154. Plaintiff raised a claim of lack of access to courts while housed at OSR in *Pemberton I*, filed in September 2010. The claim was dismissed without prejudice for failure to allege actual injury as required to state a claim upon which relief may be granted. *See Pemberton I*, 2011 WL 1598194, at *4; *Pemberton I Report and Recommendation*, 2011 WL 1595158, at *2-3, *13.

Even assuming that Oklahoma's one-year saving statute applies, Plaintiff was required to refile this claim no later than one year after the Supreme Court's October 9, 2012, denial of certiorari. Because the Complaint in the instant case was not filed until February 10, 2014, Plaintiff's Claim 3 should be dismissed with prejudice as barred by the statute of limitations. *See supra* Part IV.D.1.

### 5. Claim 5: Right to Private Communications with the Courts While at OSR

Plaintiff asserts in Claim 5 that Defendants Bethea, Jones, and Rudek are liable for violating his Fourth Amendment rights based upon those Defendants' improper search of Plaintiff's outgoing legal mail at OSR. Compl. at 51-56, 180-82. As a related subclaim (partially addressed by the Claim 4 discussion above), Plaintiff asserts that Defendants Bethea, Bear, Harvey-Haynes, and Rudek are liable both on an individual basis and for conspiring to deprive Plaintiff of his First, Fourth, and Sixth Amendment and equal protection rights by searching his private communications without authorization, causing delay in the mailing of his legal documents, and by denying Plaintiff access to necessary legal paperwork and resources, including the OSR law library and resources necessary to seek redress of his grievances. Compl. 56-65, 230-42. Plaintiff particularly objects to the lack of access to legal resources while he was in "lockdown" status at OSR from November 23, 2009, to April 19, 2010. Compl. at 54, 56-57.

As outlined above in Part IV.D.1, Plaintiff raised a claim regarding the illegal searching of his mail and access to legal resources (at both MACC and OSR) in his amended complaint (filed October 8, 2010) in *Pemberton I*, which was dismissed without prejudice. *See Pemberton I*, 2011 WL 1598194, at *4. To the extent it was previously raised in that suit, Plaintiff's Claim 5 is now untimely because it was filed more than one year after the U.S. Supreme Court's denial of certiorari on October 9, 2012. *See supra* Part IV.D.1. And, insofar as Plaintiff is claiming discrete, later-occurring constitutional violations that were not raised and disposed of in *Pemberton I*, Plaintiff's factual

allegations support an accrual date of on or about December 22, 2010, at the latest. *See* Compl. at 53, 181 (alleging that mail and supply violations occurred between the dates of November 21, 2009, and December 22, 2010); *Smith*, 149 F.3d at 1154. Plaintiff's Complaint was filed on February 10, 2014, well after expiration of the two-year limitations period. Claim 5 should be dismissed with prejudice as time-barred. *See supra* Part IV.D.1; *McCarty*, 646 F.3d at 1289.

### 6. Claim 6: Deprivation of Personal Property at OSR

In Claim 6, Plaintiff asserts that he was unlawfully deprived of his personal funds by Defendants Cheryl Wall, Rudek, and Jones in violation of the due process clause of the Fourteenth Amendment. Plaintiff alleges that Defendant Wall "fabricate[d]" an offender responsibility plan using "a falsified DOC document," with intent to deprive Plaintiff of $940 that Defendant Wall claimed was owed to McIntosh County District Court in connection with Plaintiff's state criminal proceedings. Plaintiff alleges that he was shown this plan by Defendant Wall on November 3, 2009, but refused to participate and made an "oral grievance" regarding the plan. Compl. at 66-72, 186-89; *see* Compl. Exs. 149-74 (filings from Plaintiff's motion of July 12, 2010, in *Pemberton v. State*, No. CF-2004-57 (McIntosh Cnty. Dist. Ct.), and orders from *Pemberton v. Jones*, Nos. MA-2010-951, PR-2010-952 (Okla. Crim. App. filed Aug. 3, 2010), reflecting Plaintiff's state-court efforts to prohibit ODOC's withholding of court costs from his prison account).

Plaintiff therefore knew of the alleged deprivation of his funds no later than November 3, 2009, and was required to bring his § 1983 claim within two years of that

date.  *See McCarty*, 646 F.3d at 1289.  In addition to his state-court efforts (begun on July 12, 2010), Plaintiff asserted a § 1983 claim based upon these actions in *Pemberton I*.  On April 27, 2011, the Court dismissed the claim without prejudice for failure to state a claim, citing the availability of postdeprivation remedies to Plaintiff.  *See Pemberton I*, 2011 WL 1598194, at *4.  Even assuming the applicability of Oklahoma's savings statute, Plaintiff was required to refile this claim no later than one year after the U.S. Supreme Court's denial of certiorari in *Pemberton I*, which he did not do.  Because Plaintiff failed to file the instant lawsuit within the required time period, Claim 6 should be dismissed with prejudice as time-barred.  *See supra* Part IV.D.1.

### 7.  Claim 7: Violation of Eighth Amendment at OSR: Unsanitary and Unsafe Conditions

Plaintiff next alleges that Defendants Rudek and Jones have violated his Eighth Amendment rights by temporarily forcing him, while at OSR, to be confined with the water turned off—resulting in unsanitary toilet conditions and a lack of drinking water— and in freezing temperatures.  Plaintiff alleges that these conditions resulted from an ice storm and that the general public had advance knowledge of the impending storm.  Compl. at 73-77, 189-91.

The latest date alleged for this violation is February 10, 2010, which also is the date that Plaintiff initiated a request for administrative relief through the OSR grievance system.  Compl. at 73, 76, 190; Compl. Exs. 176.  Absent any exceptions, Plaintiff's two-year § 1983 statute of limitations therefore expired in February 2012.  *See McCarty*, 646 F.3d at 1289.  Plaintiff raised a claim for relief regarding the alleged freezing

temperatures and toilet conditions prior to that date, in *Pemberton I*. On April 27, 2011, the Court dismissed the claim without prejudice for failing to state a plausible Eighth Amendment claim. *See Pemberton I*, 2011 WL 1598194, at *4. Even allowing for applicability of the one-year Section 100 savings clause, Plaintiff's current Claim 7 was filed well past that the latest possible expiration date. Claim 7 should be dismissed with prejudice as time-barred. *See supra* Part IV.D.1.

### 8. Claim 8: Eighth Amendment: Housing at OSR

Plaintiff names Defendants Melonie Almaguer, Greg Brooks, Rudek, Tracy McCollum, and Jones, and also identifies the first three of these Defendants in his conspiracy allegations, as liable for violating Plaintiff's Eighth Amendment rights in Claim 8. According to the Complaint, these Defendants were responsible for improperly placing Plaintiff into housing units where other prisoners, who were gang members and a known threat, attacked and assaulted Plaintiff. Compl. at 78-111, 192-97, 243-47.

Plaintiff alleges that the challenged Eighth Amendment violations arose from incidents occurring on or about January 13, 2011, and on or about September 1, 2011. Further, Plaintiff alleges that he separately sought administrative relief within a few days of each incident. Compl. at 90, 99-100; *see* Compl. Exs. at 177-183 (Plaintiff's requests to staff and grievances dated January 13-21, 2011), 184-88 (Plaintiff's requests to staff dated September 2 and 9, 2011). Plaintiff additionally alleges that he raised part but not all of this constitutional claim in *Pemberton I* and had a motion to supplement his pleading of October 8, 2010—seeking to add the later-occurring events of Claim 8—

pending at the time of dismissal.  Compl. at 103-06; *see Pemberton I*, No. CIV-10-966-D

(Doc. Nos. 34, 41, 42, 46, 51).

Plaintiff's claim is untimely whether it was previously raised in *Pemberton I* or is

being raised for the first time in the instant lawsuit.  In *Pemberton I*, the Court dismissed

Plaintiff's claim "that he was intentionally housed with known enemies at OSR" without

prejudice for failure to state a plausible claim for relief.  *See Pemberton I*, 2011 WL

1598194, at *4.  Applying Oklahoma's one-year savings statute, Plaintiff was required to

refile this claim by October 9, 2013, at the latest.  *See supra* Part IV.D.1.  Second, to the

extent Plaintiff is raising new violations in Claim 8, his allegations plainly show that he

was aware of the alleged violations by September 1, 2011, at the latest.  *See* Compl. at

99-100.  Applying the two-year statute of limitations for § 1983 claims, Plaintiff was

required to file this claim by September 2013.  *See Smith*, 149 F.3d at 1154; *McCarty*,

646 F.3d at 1289.  Because Plaintiff filed Claim 8 on February 10, 2014, it is untimely

under either measure and should be dismissed with prejudice as time-barred.

### 9.    Claim 9: Improper Grievance Processing at OSR

Echoing numerous similar allegations raised in the context of Plaintiff's Claims 1

through 8, Plaintiff also raises a stand-alone claim against Defendants Bear, Jones, and

Morton regarding these Defendants' allegedly improper handling of Plaintiff's

administrative grievances with respect to his complaints against staff at OSR.  Plaintiff

contends that the facility's prescribed grievance process is itself unconstitutional—

namely, to the extent that Plaintiff was placed upon grievance restriction pursuant to its

terms—and that Defendants have improperly applied that process by retaliating against

Plaintiff for seeking administrative relief, by failing to "overturn" erroneous determinations made by staff during the grievance process, and by rejecting his administrative submissions. Plaintiff asserts that these actions prevented Plaintiff from exhausting his administrative remedies as required for judicial review and therefore violated Plaintiff's First Amendment and due process rights. Compl. at 112-22, 153-65, 197-203, 207-11, 247-52.

Plaintiff previously urged Claim 9 to some extent in *Pemberton I*, identifying Defendants Morton, Rudek, and Bear as OSR officials whose actions and placement of Plaintiff on grievance restriction had left Plaintiff "with 'no available remedy' through which he could exhaust his claims." *See Pemberton I Report and Recommendation*, 2011 WL 1595158, at *7. The *Report and Recommendation* found that the claim must be dismissed:

> Prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *See Murray v. Albany County Board of County Commissioners*, No. 99–8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished op.) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)); *Anderson v. Colorado Dept. of Corrections*, No. 98–1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (unpublished op.) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"). *See also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (holding that federal prison administrative remedy procedures do not "in and of themselves" create a liberty interest in access to that procedure; finding the prisoner's right to petition the government for redress is the right of access to the courts); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established

by the state); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding there is no legitimate claim of entitlement to a grievance procedure).

> Contrary to his allegation, Plaintiff has not been left with "no available remedy" through which he could exhaust the claims he has brought in this Amended Complaint. The grievance restriction does not entirely preclude access to the grievance process. An inmate must, however, follow the steps outlined in the ODOC policy. Because no constitutional right guarantees access to a prison grievance procedure, Plaintiff's due process rights have not been violated by defendants' following or failing to follow the ODOC grievance procedures. Plaintiff's allegations concerning prison grievance procedures do not state a claim upon which relief may be granted. These claims should be dismissed with prejudice.

*Id.* at *7-8. The Court adopted this analysis in full. *See Pemberton I*, 2011 WL 1598194, at *3.

To the extent Plaintiff already raised this Claim in *Pemberton I*, Plaintiff is barred from pursuing it again in this Court. On April 27, 2011, the Court held that Plaintiff failed to state a claim and, moreover, "Plaintiff cannot state such a claim because prison grievance procedures do not create a protected liberty interest and do not implicate his due process rights." *Id.* at *3. The Court accordingly held that "this claim must be denied with prejudice because it cannot be asserted as a matter of law in the context of a § 1983 claim for relief." *Id*. Because Plaintiff's challenges regarding the prison grievance procedures at both MACC and OSR were dismissed and denied "with prejudice," these OSR-related challenges must be dismissed with prejudice here. *See* Fed. R. Civ. P. 41(b); *Styksal*, 365 F.3d at 859; *Benton*, 587 F. App'x at 450.

To the extent this Claim may implicate events or Defendants not before the court in *Pemberton I*, having reviewed the instant Complaint, the undersigned concludes that

the authorities and legal conclusion as to the merits of the Claim set forth in the *Pemberton I Report and Recommendation* are equally applicable here. Because "[i]nmates do not have a protected liberty interest in pursuing formal grievance procedures," Plaintiff fails to state a claim upon which relief can be granted under § 1983. *See Spry v. McKune*, 479 F. App'x 180, 181 (10th Cir. 2012); *Pemberton I*, 2011 WL 1598194, at \*3 (citing *Murray*, 2000 WL 472842). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (alteration and internal quotation marks omitted) (affirming district court's § 1915A dismissal of access-to-courts claim premised upon unavailability of administrative remedy); *see Spry*, 479 F. App'x at 181 (affirming district court's dismissal of due process claim premised upon unavailability of administrative remedy for failure to state a claim upon which relief may be granted). Plaintiff's claim of a constitutional violation on this basis should be dismissed with prejudice.

### 10.   Claim 10: OSR Incident of March 5, 2012

Finally, Plaintiff alleges that several constitutional violations occurred in the course of disciplinary proceedings arising from an alleged encounter between Defendant Alicia Gurrero and Plaintiff on March 5, 2012, and Defendant Gurrero's initiation of a disciplinary misconduct report against Plaintiff following that encounter. *See* Compl. at 123-52, 165-69, 200-07 (collectively, Claim 10 or the "March 2012 Claims"); Compl. Exs. at 203-334. According to Plaintiff's Complaint, Defendant Gurrero verbally labeled

Plaintiff a "rat" in front of other inmates and filed a false battery-on-staff charge against Plaintiff after Plaintiff had sought administrative relief because Defendant Gurrero had failed to deliver Plaintiff's mail. Compl. at 123. The Complaint alleges that Plaintiff initially was convicted of the battery-on-staff charge cited in Defendant Gurrero's disciplinary misconduct report but that this conviction ultimately was reversed upon the prison's disciplinary rehearing. *See* Compl. at 123-24.

Plaintiff alleges that Defendant Gurrero violated his Eighth Amendment rights by showing deliberate indifference to Plaintiff's safety. Compl. at 125-28. Plaintiff additionally alleges that Defendants Kerry Kendal, L.D. Ormand, Bear, McCollum, Morton, and Jones violated his First and Fourteenth Amendment rights by condoning Defendant Gurrero's retaliation and by failing to remedy irregularities and a lack of due process in the resulting investigation and disciplinary proceedings. Compl. at 129-52, 165-69, 203-07.

Because Plaintiff's Complaint was filed on February 10, 2014, and the March 2012 Claims are based on constitutional violations alleged to have begun with the incident of March 5, 2012, these Claims were timely brought within the two-year statute of limitations. *See McCarty*, 646 F.3d at 1289. In conducting the required screening of Plaintiff's pleading, however, the undersigned found that the affirmative allegations made in the Complaint clearly indicate that Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). *See* Order to Show Cause of Jan. 13, 2015 (Doc. No. 44) (citing Compl. at 126, 135, 139, 145, 152; *Freeman*

*v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

The PLRA requires that a prisoner exhaust all available administrative remedies before resorting to a 42 U.S.C. § 1983 action in federal court.  Specifically, the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  In construing this legislation, the Supreme Court has determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  A prisoner successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure.  *Id.* at 218.  "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007).  Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda*, 478 F.3d at 1225.

Accordingly, the undersigned advised Plaintiff that the March 2012 Claims were subject to being dismissed due to lack of PLRA exhaustion.  In accordance with the procedure endorsed by the Tenth Circuit, Plaintiff was permitted to "present information on exhaustion." *See* Order to Show Cause of Jan. 13, 2015, at 3-4.  Specifically, Plaintiff

was directed to "describe any steps he has taken to exhaust his administrative remedies, as well as any action or inaction of prison officials Plaintiff believes may have hindered his efforts to exhaust those remedies," and "to show cause by February 3, 2015, why the March 2012 Claims of his Complaint should not be dismissed for failure to exhaust administrative remedies prior to filing." *Id*.

Plaintiff timely responded to the Order to Show Cause on January 27, 2015. *See* Pl.'s Resp. (Doc. No. 46). In his detailed Response, Plaintiff objects to dismissal of the March 2012 Claims on several grounds.

First, Plaintiff asserts, as he did in the Complaint, that he exhausted all available administrative remedies because he successfully obtained reversal of his misconduct conviction on August 31, 2012. *See* Pl.'s Resp. at 2, 3, 6; Pl.'s Resp. Ex. 1 (Doc. No. 46-1) at 1. As explained in the Order to Show Cause, this argument is unavailing. Plaintiff's allegations in both the Complaint and the Response reflect that rather than pursuing *administrative* relief through the prison grievance process on the civil rights violations alleged in the March 2012 Claims, Plaintiff directly appealed the misconduct conviction itself through the prison's *disciplinary* channels. *See* Compl. at 126, 135, 139, 145, 152; Pl.'s Resp. at 2; Pl.'s Resp. Ex. 1. *Compare* Okla. Dep't of Corr., *Disciplinary Procedures* (OP-060125, eff. Oct. 16, 2012), *with* Okla. Dep't of Corr., Offender Grievance Process (OP-090124, eff. Nov. 20, 2014) (both documents available through http://www.ok.gov/doc/). Pursuing such a disciplinary appeal, however, is neither a substitute for nor a prerequisite to seeking administrative relief on the claims to be raised in a § 1983 lawsuit in this Court. *Cf. Marshall v. Lee*, 529 F. App'x 898, 899-900 (10th

Cir. 2013) (affirming dismissal under PLRA of § 1983 action for failure to exhaust administrative remedies on claims of retaliation and denial of due process during prison misconduct proceedings); *Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006) (holding PLRA satisfied "so long as [federal prisoner's grievance] provides prison officials with enough information to investigate and address the inmate's complaint internally"), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

Second, Plaintiff argues that the ODOC Offender Grievance Process, through which a prisoner in its custody may seek formal administrative decisions or answers to complaints, "prohibit[s] the filing of an inmate grievance in this circumstance." Pl.'s Resp. at 2; *see* Okla. Dep't of Corr., Offender Grievance Process, OP-090124 (eff. Jan. 29, 2013) (portions attached as Exhibit 2 to Plaintiff's Response (Doc. No. 46-2)). Plaintiff relies on three provisions of OP-090124 to support this argument. The first provision Plaintiff cites is OP-090124 § II.B.2, which states: "Grievances may not be submitted about matters that are in the course of litigation." Pl.'s Resp. at 3; Pl.'s Resp. Ex. 2, at 1. Plaintiff's March 2012 Claims were not "in the course of litigation," however, until he filed this Complaint on February 10, 2014. Plaintiff could (and should) have sought administrative relief in the nearly two-year period preceding the initiation of this lawsuit, before the March 2012 Claims became the subject of litigation. OP-090124 § II.B.2 does not apply to excuse PLRA exhaustion of these Claims. *See Sturgis v. Thomas*, No. CIV-11-1451-R, 2012 WL 968019, at *3 & n.3 (W.D. Okla. Mar. 5, 2012)

(report and recommendation of Roberts, J.), *adopted*, 2012 WL 968001 (W.D. Okla. Mar. 20, 2012).

Third, Plaintiff cites OP-090124 § II.B.3 as barring him from exhausting the March 2012 Claims. Section II.B.3 provides: "Requests for disciplinary action against staff will not be addressed through the grievance process." OP-090124 § II.B.3 (Pl.'s Resp. Ex. 2, at 2). According to Plaintiff, his requests "to find a violation of the Constitution and [for] damages awards are disciplinary actions" and therefore barred by § II.B.3 as a nongrievable issue. Pl.'s Resp. at 3-4. Plaintiff cites no authority for this proposition.

A request for "disciplinary action" is more reasonably construed as a request for internal personnel action taken by the employer, such as firing, suspending, or transferring an employee, than as a court-entered judgment or damages award. *See, e.g.*, *Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014) (referencing a "personnel order" of employee's suspension that stated "further violations would lead to more severe disciplinary action, including dismissal"); *accord* Pl.'s Resp. at 4 (defining "disciplinary" as "punishment to *correct or train*" or "*[t]raining* expected to produce a specific character or pattern of behavior" (emphasis added)).

In addition, Plaintiff in his Complaint seeks various types of declaratory and injunctive relief on his § 1983 claims—not merely the finding of constitutional violations and the damages awards cited by Plaintiff in his Response. *See* Compl. at 257-64. The Tenth Circuit addressed a similar situation in *Beaudry v. Corrections Corporation of America*, 331 F.3d 1164 (10th Cir. 2003):

In *Booth* [*v. Churner*, 532 U.S. 731 (2001)], the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation. The Court further noted that exhaustion potentially filters out frivolous claims and ultimately clarifies the contours of the controversy in cases that eventually reach the courts. In this case, these policy reasons are particularly pertinent. Plaintiffs' complaint requested not only money damages but also "injunctive" relief . . . . While this prayer for relief is couched as a request for various injunctions, we think this is exactly the type of situation to which the Court in *Booth* was referring when it outlined the benefits of exhaustion. "[E]xhaustion in these circumstances would produce administrative results that would satisfy at least some inmates who start out asking for nothing but money, since the very fact of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket." Further, "[i]n some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Porter v. Nussle*, [534 U.S. 516, 525 (2002)]. Plaintiffs' demands for weapons training for corrections officers, medical care, and decontamination are all matters which the prison administration could affect. Even though matters involving federal and state law and regulation were "non-grievable" under prison policy, the fact that prison authorities did have the power to render some of the relief requested by plaintiffs puts this case squarely within the ambit of *Booth*. Plaintiffs were required to exhaust their administrative remedies before bringing their § 1983 claim, and the district court was correct in so holding.

*Id.* at 1167 (citations omitted) (rejecting plaintiffs' argument that they were not required to exhaust administrative remedies because their request for money damages rendered their complaints "nongrievable" under prison procedures). Plaintiff fails "to appreciate the import of [his] complaint taken as a whole." *See id.* "The administrative procedures provided some remedy[,] and Plaintiff is obligated to exhaust those procedures even if the available remedy is not one of his choosing." *Hoover v. West*, 93 F. App'x 177, 180-81 (10th Cir. 2004) (holding that it was "insufficient" for plaintiff "to simply point to the

lack of either a tort cause of action or an inmate-initiated disciplinary action against staff").

The ODOC Offender Grievance Process permits the reviewing authority to either grant or deny a grievance, in whole or in part, and where a grievance is granted the reviewing authority may fashion any appropriate remedy authorized by Oklahoma law. OP-090124 §§ VI.B.5, VI.C.1. As outlined in *Booth*, as long as the administrative procedure provides for prison authorities to take some action—even if that action is not the remedy sought by the prisoner—the exhaustion requirement is triggered. *See Booth*, 532 U.S. at 741 ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). Plaintiff here made no attempt to seek any type of remedy pursuant to the ODOC Offender Grievance Process and did not have any grievance filing returned on the basis that it sought prohibited disciplinary action. Plaintiff was not excused through OP-090124 § II.B.3 from attempting to obtain relief.

Fourth, Plaintiff cites the time limits of the ODOC Offender Grievance Process and asserts that he was unable to comply with these time limits to seek relief through the administrative grievance process because his initial encounter with Defendant Gurrero was on March 5, 2012, and his disciplinary conviction was not overturned until August 31, 2012. Pl.'s Resp. at 3-4. Plaintiff's March 2012 Claims consist of a series of discrete wrongs—including both his encounter with Defendant Gurrero and specific actions taken by Defendants Kendal, Ormand, Bear, McCollum, Morton, and Jones during his disciplinary proceedings—that were alleged to be known to Plaintiff at the time they

occurred. Thus, although the ODOC Offender Grievance Process requires that the initial attempt at administrative relief, the "Request to Staff," be filed within seven days of the incident about which the offender complains, *see* OP-090124 § IV.C.3 (Pl.'s Resp. Ex. 2, at 4), Plaintiff could have sought relief as to each of these alleged wrongs as they arose during the period between March and August 2012. *See* Compl. at 123-52, 165-69, 200-07. And even if these Defendants' actions were somehow concealed from Plaintiff until he was exonerated (a conclusion not supported by the allegations of Plaintiff's Complaint), Plaintiff could have sought administrative relief within the requisite time period following the reversal of his disciplinary conviction on August 31, 2012. Plaintiff made no such attempt and, further, made no request to submit a grievance out of time. *See* OP-090124 § XII. Plaintiff may not rely on the general time limit of OP-090124 § IV.C.3 to excuse his repeated lack of compliance with the administrative exhaustion requirements.

Fifth, Plaintiff alternatively argues that his failure to exhaust the March 2012 Claims should be excused because an administrative remedy was not "available" to him due to the threat of "serious bodily injury" he faced in seeking such a remedy. *See* Pl.'s Resp. at 4-6 (citing *Tuckel v. Grover*, 660 F.3d 1249 (10th Cir. 2011)). As support for this contention, Plaintiff points to (i) certain allegations in his Complaint, wherein he contends OSR officials improperly housed him with gang members (Claim 8); and (ii) his allegation that Defendant Gurrero called him a "rat." *See id.*; Pl.'s Compl. at 78-111, 123-28, 192-97, 243-47. It is true that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy

'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010); *Tuckel*, 660 F.3d at 1252. Here, however, Plaintiff does not, in his Response or through the referenced allegations, demonstrate that prison officials impeded his ability to exhaust administrative remedies to such an extent.

Plaintiff contends that the allegations of Claim 8, in which he asserts that he was intentionally housed with known enemies at OSR in violation of the Eighth Amendment, show that Plaintiff was deterred by threat or intimidation from seeking administrative relief on the March 2012 Claims. Pl.'s Resp. at 5-6. In Claim 8, Plaintiff alleges that Defendants placed him in unsafe housing, and denied his requests for his preferred cellmate, with deliberate indifference to a known risk of substantial harm—including by disregarding Plaintiff's claims of physical attacks and denying Plaintiff's administrative requests for transfer. Plaintiff, however, does not allege that the housing decisions challenged in Claim 8 were themselves effected as retaliation for Plaintiff's previous filing of grievances against OSR staff or motivated by a desire to prevent Plaintiff from seeking internal administrative relief. *See* Compl. at 78-111, 192-97, 243-47; *see* Compl. Exs. 177-88; *cf. Tuckel*, 660 F.3d at 1254 (holding that the court must "consider the context of the alleged threat or intimidation" in determining whether that threat or intimidation would deter a reasonable inmate from pursuing administrative relief).

Regardless, Plaintiff specifically alleges that he sought administrative relief for the housing incidents complained about in Claim 8. *See* Compl. at 79-80, 84, 87, 90-91, 98, 109-11 (allegations of incidents in January and September 2011 and of multiple administrative submissions from January 2011 to September 2011). Plaintiff's

administrative filings in this regard are incorporated into the Complaint.  *See* Compl. Exs. at 177-88 (multiple items of administrative grievance paperwork dated from January 2011 to September 2011).  Plaintiff also sought administrative relief at OSR on multiple unrelated issues after most of the housing-related events in Claim 8 allegedly transpired. *See* Compl. Exs. 119-37 (administrative requests and grievances submitted at OSR from June through August of 2011).  Thus, Plaintiff's allegations of being deterred through threats or intimidations from seeking administrative relief on the March 2012 Claims before filing this lawsuit, are "belied by his own ample grievance record."  *See Escobar v. Mora*, 496 F. App'x 806, 809-10 (10th Cir. 2012) (rejecting plaintiff's attempt to excuse exhaustion based on threats of retaliation where plaintiff had filed grievances regarding other matters).

Plaintiff alleges that, prior to the incident of March 5, 2012, he had administratively complained about Defendant Gurrero's "failure to deliver mail" and that Defendant Gurrero retaliated by calling him a "rat."  Compl. at 123.  Plaintiff's allegations are not sufficient, however, to permit a reasonable inference that a reasonable inmate in Plaintiff's shoes would believe himself threatened or intimidated to such an extent as to make exhaustion unavailable.  *See* Pl.'s Resp. at 5-6.  "Only threats that are sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes."  *Tuckel*, 660 F.3d at 1254.  The Tenth Circuit in *Tuckel* found that an inmate had sufficiently alleged that he was deterred from using an offender grievance process when (i) the inmate's filing of a complaint about a prison official in the prison's

grievance system caused other inmates to lose incentive pay; and (ii) at the "apparent recommendation" of prison officials, including the official named in the administrative complaint, those inmates assaulted the inmate, causing severe damage to his eye. *See Tuckel*, 660 F.3d at 1251. A single prison official verbally labeling an inmate a "rat," one time, does not support an inference of "threats or intimidation" that reasonably would prevent the inmate from pursuing administrative remedies. *See Little*, 607 F.3d at 1250; *Escobar*, 496 F. App'x at 809 (affirming dismissal of unexhausted claims where plaintiff "generally complain[ed] that he faced threats of retaliation for using the grievance process"); *Turner v. Burnside*, 541 F.3d 1077, 1081, 1084-85 (11th Cir. 2008) (holding that prison official's ripping up prisoner's submitted grievance form, specifically threatening transfer of prisoner to a facility where he could not see his family, and telling prisoner he "had better not hear of another grievance or lawsuit" pertaining to the underlying incident could make an administrative remedy "unavailable"); *Kaba v. Stepp*, 458 F.3d 678, 678, 682-86 (7th Cir. 2006) (finding disputed fact issues regarding availability of administrative remedy where federal prisoner alleged that prison official denied him grievance forms, threatened him "repeatedly," and "solicited other inmates to attack him in retaliation for filing grievances," and multiple other officials had knowledge but did not attempt to stop the official until plaintiff was actually beaten unconscious in his cell).

Plaintiff also alleges that his October 2009 transfer from MACC to OSR was a retaliatory act. *See supra* Part IV.D.2; Compl. at 31-252. But this transfer occurred

nearly three years prior to the violations at issue in the March 2012 Claims.[8]  "[A] threat that was allegedly made years prior to the inmate's suit may fail to render administrative remedies unavailable." *Tuckel*, 660 F.3d at 1254.  Of note, despite constitutional violations allegedly occurring until his disciplinary conviction was reversed on August 31, 2012, Plaintiff did not attempt to file grievances on these issues after being transferred away from OSR and its allegedly retaliatory officials.  The Tenth Circuit has observed that "if an inmate is no longer held in the prison in which he experienced retaliatory violence," that fact may prevent a finding that administrative remedies were rendered unavailable.  *See Tuckel*, 660 F.3d at 1254 (discussing the showing an inmate must make for the court to make the objective finding that "a reasonable inmate of ordinary firmness and fortitude" would be deterred from seeking administrative relief); *see also* OP-090124 § V.B (providing that an offender may file a grievance regarding an incident at another facility).

It is clear, from both the face of the Complaint and from the Response and supporting documentation submitted by Plaintiff when "afforded an opportunity to counter" the issue of exhaustion, that Plaintiff has failed to exhaust his administrative grievance remedies under the PLRA without a valid excuse.  *See Tuckel*, 660 F.3d at 1254; *Aquilar-Avellaveda*, 478 F.3d at 1225; Compl. at 126, 135, 139, 145, 152; Compl. Exs. at 216-24; Pl.'s Resp.; Pl.'s Resp. Exs. 1, 2.  Prison officials have conducted disciplinary proceedings on Plaintiff's battery-on-staff misconduct report but never been

---

[8] Plaintiff does not make a corresponding allegation of retaliation with respect to his March 29, 2012 transfer from OSR to DCF.

given the opportunity to address Plaintiff's complaints with respect to his encounter with Defendant Gurrero and the disciplinary proceedings themselves. Because unexhausted claims cannot be brought in this § 1983 action, the March 2012 Claims should be dismissed without prejudice. *See Aquilar-Avellaveda*, 478 F.3d at 1225; *Freeman*, 479 F.3d at 1260; *Marshall*, 529 F. App'x at 899-900; 42 U.S.C. § 1997e(a).

### E.  No Grounds for Equitable Tolling of Plaintiff's Claims

The application of tolling to Plaintiff's federal civil rights claims is governed by Oklahoma law. *See Breedlove v. Costner*, 405 F. App'x 338, 342 (10th Cir. 2010); *Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009).

> Under Oklahoma law, equitable tolling is appropriate when: (1) there is a legal disability because the plaintiff's competency is impaired or the plaintiff has not yet reached the age of majority; or (2) when defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights. This court has also noted that "exceptional circumstances" may justify equitable tolling.

*Breedlove*, 405 F. App'x at 342 (internal quotation marks omitted) (citing *Young*, 554 F.3d at 1258; *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004)).

The allegations of Plaintiff's Complaint "do not fit within any of these circumstances." *See Young*, 554 F.3d at 1258 (affirming dismissal of *Bivens* claim on § 1915A screening as barred by the statute of limitations). Plaintiff does not claim he is under a "legal disability" or that Defendants engaged in "false, fraudulent, or misleading conduct" to lull Plaintiff into sitting on his rights. *See id.*; *Breedlove*, 405 F. App'x at 342. The Tenth Circuit has rejected the argument that incarceration amounts to a "legal disability" for purposes of tolling the statute of limitations under Oklahoma law. *Heuston*

*v. Ballard*, 578 F. App'x 791, 793 (10th Cir. 2014) (citing cases). "Moreover, although [Plaintiff] alleges improprieties by Defendants, he has not articulated specific circumstances warranting tolling for exceptional circumstances." *See Breedlove*, 405 F. App'x at 342. Rather than being prevented from filing his claims, Plaintiff initiated and vigorously prosecuted his prior, overlapping civil rights action from September 2010 until late 2012, a time period during which many of the constitutional violations cited in the Complaint allegedly occurred. *See Pemberton I*, No. CIV-10-966-D (Doc. Nos. 1, 73); *supra* Part IV.D.1 to .9. Plaintiff also litigated extensively in state trial and appellate courts regarding OSR officials' allegedly improper withholding of his prison trust account funds in 2010. *See supra* Part IV.D.6.

Because no grounds for equitable tolling exist in this case, those claims of the Complaint found to be time-barred should be dismissed for failure to state a claim upon which relief may be granted. *See Young*, 554 F.3d at 1256, 1258; *Heuston*, 578 F. App'x at 792-93.

## V.     Plaintiff's Pending Motions

Plaintiff additionally has filed motions seeking a temporary restraining order and a preliminary injunction (Doc. Nos. 13, 14), as well as: a Motion for Hearing on his Complaint and other pending issues (Doc. No. 16), a Motion for Leave to Proceed Under Fictitious Name (Doc. No. 35), and a Motion for Extension of Time to Serve Defendants (Doc. No. 37). Each of these motions should be denied.

As a threshold matter, Plaintiff's motion for a temporary restraining order (or "TRO") contains only unfilled blanks regarding notice to Defendants and reflects that it

was submitted only to the Court. The motion thus fails to certify "any efforts to give notice and the reasons why it should not be required," as required by Federal Rule of Civil Procedure 65(b)(1). *See* Doc. No. 13, at 1, 5.

Plaintiff's request for preliminary injunctive relief (Doc. No. 14) is also lacking. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For entry of a preliminary injunction, the applicant generally must satisfy four elements, including a substantial likelihood that he or she will prevail on the merits. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001).[9] A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

Further, the nature of the relief requested by Plaintiff invokes a heightened standard of scrutiny. A preliminary injunction is characterized as "mandatory" if it affirmatively requires the nonmovant to act in a particular way and, as a result, places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction. *Id.* at 1261; *Little*, 607 F.3d at 1251. Here, Plaintiff seeks multiple forms of relief that are mandatory in nature—including a prohibition on officials searching or opening Plaintiff's legal mail, transferring Plaintiff away from DCF, or housing Plaintiff at MACC. *See* Doc. Nos. 13, 14. Plaintiff's

---

[9] Additional factors are (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *See Kikumura*, 242 F.3d at 955.

requested injunctive relief would affirmatively require Defendants to act in a particular way and would place this Court in a position where it would be required to provide ongoing supervision. *See* Doc. Nos. 13, 14; *Schrier*, 427 F.3d at 1261. Plaintiff therefore must meet a "heightened standard" on all four required elements. *See Little*, 607 F.3d at 1251. The preliminary injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *See Schrier*, 427 F.3d at 1259. Plaintiff further must make a "strong showing" both with regard to likelihood of success on the merits and with regard to the balance of harms in order to obtain this disfavored interim relief. *Id*. at 1261.

Plaintiff's request for preliminary injunctive relief (as well as the request for a TRO) relies upon the same claims as those set forth in the Complaint. *See* Doc. Nos. 13, 14. For the reasons set forth above, Plaintiff's claims are subject to dismissal in their entirety. Plaintiff therefore cannot show "a substantial likelihood of success on the merits" with respect to his constitutional claims, which are echoed in the motion for preliminary injunction. *See Kikumura*, 242 F.3d at 955; *Pemberton I Report and Recommendation*, 2011 WL 1595158, at *14; *Church v. Okla. Corr. Indus.*, No. CIV-10-1111-R, 2011 WL 4376222, at *13 (W.D. Okla. Aug. 15, 2011) (report and recommendation of Couch, J.), *adopted*, 2011 WL 4383225 (W.D. Okla. Sept. 20, 2011), *and aff'd*, 459 F. App'x 806 (10th Cir. 2012). It follows that Plaintiff indisputably cannot meet a "heightened standard" or make a "strong showing" with regard to the likelihood of success on the merits of these claims, as required for the Court to order Plaintiff's requested mandatory injunction. *See Schrier*, 427 F.3d at 1261; *Little*, 607 F.3d at 1251.

In addition, Plaintiff has not met his heightened burden of demonstrating another factor required for preliminary injunctive relief—that the requested relief is not adverse to the public interest. *See Schrier*, 427 F.3d at 1261; *Kikumura*, 242 F.3d at 955. The relevant public interest here involves deference to prison officials' proper administration of their prison facilities. A federal court considering a motion for injunctive relief affecting the conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation. 18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012). The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be accorded unless they violate the Constitution or other federal law. *See Turner v. Safley*, 482 U.S. 78, 84-86 (1987).

Even if Plaintiff could succeed on his constitutional claims, the assertions in his motions do not justify the Court immediately mandating that Plaintiff's requests be followed, which would interfere with prison management. Granting the relief Plaintiff seeks would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take. *See Turner*, 482 U.S. at 84-86; *cf. Stephens*, 494 F. App'x at 912 (affirming denial of requested injunctive relief as "overbroad and more intrusive than necessary"). For all of these reasons, Plaintiff's motions for a TRO and preliminary injunctive relief (Doc.

Nos. 13, 14) should be denied. *See, e.g.*, *Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb. 4, 2000) (affirming denial of TRO when "the relief requested was not consistent with the public interest").

Plaintiff's other pending motions (Doc. Nos. 16, 35, 37) all are premised upon the continued viability of Plaintiff's claims, as well as a finding that Defendants should be made to respond to Plaintiff's legal claims. Such motions should be denied in light of the undersigned's recommendation of dismissal of all claims in the Complaint, as outlined above.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Plaintiff's Complaint be dismissed in its entirety pursuant to 28 U.S.C. §§ 1915A and 1915(e) and 42 U.S.C. § 1997e(c) for failure to state a claim upon which relief may be granted under federal law, for seeking relief that is barred by the Eleventh Amendment, for asserting claims that are barred by disposition of Plaintiff's previous lawsuit, and for failure to exhaust administrative remedies under the PLRA. Specifically, the undersigned recommends that:

(1) The Court dismiss without prejudice Plaintiff's (a) claims against Defendants Fallin, Pruitt, Nickell, and Wortham, (b) claims seeking money damages under § 1983 against any Defendant in his or her official capacity, and (c) Claim 10.

(2) The Court dismiss with prejudice all other of Plaintiff's claims.

(3) The Court deny Plaintiff's pending motions (Doc. Nos. 13, 14, 16, 35, 37).

(4)     This dismissal be counted as a "strike" pursuant to 28 U.S.C. § 1915(g) "from the date when [Plaintiff's] time to file a direct appeal expire[s]" or, if he files a timely direct appeal, "from the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if [Plaintiff] files one, or from the date when the time to file a petition for writ of certiorari expire[s], if he d[oes] not." *See Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1175 (10th Cir. 2011); *Thomas*, 672 F.3d at 1184 (adopting view that a dismissal based in part on failure to state a claim and in part on failure to exhaust should be counted as a strike under § 1915(g)).

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to file an objection to the Report and Recommendation with the Clerk of this Court by March 10, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 17th day of February, 2015.


CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE